CHARLIE McCLENNAN v. THE STATE.

No. 1251. Decided November 8, 1911.

Rehearing denied December 6, 1911.

1.—Murder—Sufficiency of the Evidence—Death Penalty.

Where, upon trial of murder, the evidence sustained the conviction assessing the death penalty, there was no reversible error.

Appeal from the District Court of Washington. Tried below before the Hon. Ed. R. Sinks.

Appeal from a conviction of murder in the first degree; penalty, death.

The opinion states the case.

*Warren W. Moore,* for appellant.

*C. E. Lane,* Assistant Attorney-General, for the State.

HARPER, JUDGE.—Appellant was indicted by the grand jury of Washington County, charged with murder, and when tried, was adjudged guilty of murder in the first degree and his punishment assessed at death.

The motion for a new trial contains but two grounds: (1) "That said verdict is contrary to the law and the evidence; (2) That the evidence in said cause failed to establish beyond a reasonable doubt that defendant was guilty as charged in the indictment." These grounds are rather general. However, as the death penalty was assessed, we have read the statement of facts with painstaking care and have come to the conclusion that the judgment should be affirmed. A statement of defendant was introduced in evidence in which defendant stated:

"I, Charlie McClennan, on the evening that Mr. Herbert Hughes was killed, came from my mother's house about dark, and came by Sellus Hall's house and there found Kundjo Willbourn, my brother, Johnnie McClennan, and Bob Walker, out near the well, and heard Kundjo Willbourn say that Mr. Herbert Hughes would be by there directly and we will lay for him and get him, and Kundjo Willbourn asked Sellus Hall to let him ride his horse down the road and Sellus Hall said allright, and Kundjo told Johnnie and Bob that he would go and see if Mr. Herbert was coming, and I and Richard Berkley started home and got as far as Bob Smith's old store and then I heard some shooting and stopped and then I heard some people hollering down towards Sellus Hall's house and I and Richard went back down there, and when I got there I found nearly all the people in the quarter there, and among them were Kundjo and Bob, and I talked to Kundjo —he told me that he (Kundjo) shot two or three times at the man in the buggy and he thought that it was Chip Routt."

The evidence of all the witnesses show that Kundjo Willbourn and Bob Walker were not present at the scene of the killing, but that those present were defendant, his brother Johnnie McClennan, Kid Birkley, Fred Daniels and Cal Daniels. The undisputed testimony further shows that the only man in possession of a shotgun on that occasion was defendant, and also shows that deceased was killed with a shotgun. If the witness, Walker, is to be given credence, defendant's brother, on Saturday before the killing on Monday night, had said he and deceased had had a falling out, and if he ever ran on him, he was going to get even with him. Immediately after the killing, the father of deceased said, "I told my boys not to come out here with their guns." From the way the witnesses for both the State and defendant detail the difficulty, it must have been a premeditated killing, and defendant himself would have the parties waylaying deceased, saying that Willbourn said, "We will wait for him and get him," thus making the killing a cold-blooded assassination, only he would have another person committing the murder, while, as hereinbefore stated, Kundjo Willbourn was not present, and defendant himself was present, and the only person in possession of a shotgun.

*Affirmed.*

[Rehearing denied December 6, 1911.—Reporter.]